We'll hear argument next in case 1971, Tanzin v. Tanvir. Mr. Kneedler? Mr. Chief Justice, and may it please the Court, in enacting RFRA, Congress did not subject federal employees throughout the government to a new cause of action for damages in their personal capacity. RFRA's remedy section provides only for appropriate relief against the government. Damages against an individual employee in his personal capacity are not relief against the government. At the same time, where a suit is brought against the federal government, including against a federal official in his official capacity, as RFRA provides for, money damages are not appropriate relief. Prior to this Court's decision in Smith and the passage of RFRA, conjunctive relief against a federal agency or official was the only appropriate relief for an asserted free exercise violation. This Court had not recognized the personal damages action under Bivens for a violation of the free exercise clause, and it has not done so since. Moreover, prior to RFRA, Congress had enacted the Westfall Act, which adopted a broad bar to court suits against federal employees to prevent the killing effects for the executive branch from the prospect of personal liability and protracted litigation for its employees. Congress has only very rarely departed from that general rule and subjected federal employees to personal damage suits, and when it has, it has done so expressly, which it did not do in RFRA. When Congress enacted RFRA to restore the substantive standard for free exercise claims to what it was prior to Smith, it did not at the same time significantly depart from the established remedial scheme. This Court should not now read into the text of RFRA, which provides only for relief against the government a sweeping new Bivens-style cause of action against federal employees and their personal capacity for damages. Mr. Kneedler, you rely in your brief on a clear statement rule about the liability that's at issue here, but what is your best case for the proposition that a clear statement rule applies when the question is whether individuals can be liable in their personal capacity rather than in an official capacity? I think the principle derives from the point I just made about the Westfall Act and more generally, Congress's practice with respect to establishing private damage remedies against federal employees. The general rule, a statutory rule, is that there is not. And when Congress has departed, it has done so expressly in the few examples cited in the brief. So I think it derives from what Congress itself had done. And because of respect for the executive branch, Congress should not lightly be taken to have intruded upon the executive branch by creating damage remedies against federal employees who are charged with executing the laws. And I think that's specifically or especially so under RFRA, which is principally designed to create exemptions from generally applicable laws. Any damage action isn't well suited to that sort of situation because an employee is in the position of having to decide maybe on the spot whether to create an exemption from the generally charged with implementing. I think I meant to anyway, if I didn't ask for a precedent, and I didn't hear a case name in your answer. I'm sorry. No, I don't think the Court has specifically addressed it, but it has done something analogous with respect to statutes affecting state administration. And the Court's Soseman decision, I think, is instructive in that waives sovereign immunity of a state. And the Court, out of deference to the state and under our federalism, concluded that language is ambiguous and doesn't sufficiently establish a cause of action against the state. And the lower courts have uniformly not allowed damage actions against state employees under RLUIPA as well. And we think the respect for the executive branch that is reflected in the statutes Congress has passed calls for a parallel rule of deference, parallel to that of the federalism deference in Soseman. Thank you. Justice Thomas? Thank you, Chief Justice. Mr. Kneedler, let's assume you take this out of the context of the action that provides for appropriate relief. Would money damages be available then? I don't think it's possible to give an across-the-board answer to that question. In Franklin, the Court was dealing with a situation where the cause of action itself was implied by the Court at a time when the Courts were allowed to create causes of action under their general jurisdictional power. And in that situation, it was part of the package that the Courts could develop whatever remedies they wanted. But in a statute, context matters. You don't start with presumption that damages are available. You start with a text that Congress has enacted, and the text has to be interpreted in context. So it would depend upon the particular statute in which that language may appear. And here, of course, the context assumes against federal employees of the federal government. Let's take this statute, and instead of having merely appropriate relief, we say we include the statute authorizes money damages with all the other language remaining the same. Would that be enough? It might be. I guess it would because if the damages were available against the government, and the statute refers to relief against the government, if Congress provided for damages against the government, there would be, I think, a pretty good argument that it would be applicable to employees who are included in the government. But here we have the opposite, no clear statement imposing damages against the government, and government officials are covered only to the government. So historically, and I'm just curious, have suits against postmasters or custom agents, has the relief there been limited by the availability of relief against the government? Well, initially, damages actions used to be brought against custom officers. As I recall, the Congress really substituted suits against the government, like for tax refunds, rather than suits against the collector in order to make the government the responsible one and not the individual. And I think the Westfall Act clears out a lot of that by saying, as a general matter, ordinary tort suits can't be brought against the government because Congress was concerned about the effect on employee morale and killing their conduct. So I think the statutory pattern, especially in recent times, has been suits against the government itself. And again, that's especially appropriate under RFRA. Thank you, Counsel. Justice Breyer? I have one question. What is your best argument, in your opinion, against what I think is the other side's argument? We're looking at the statute. The relevant words, since government is a defined term, the statute authorizes appropriate relief against any official or other person acting under color of law. All right, that's the relevant words. And there's lots of cases that appropriate relief can, in appropriate cases, include monetary relief. Of course, if the person has sovereign immunity of some kind, then you can't sue them. That's SOSMA. But there's no sovereign immunity here. End of case. All right. Now, what's your best answer to that, in your opinion? The operative term in RFRA is government, and that's not just in the substantive provision, which says the government shall not substantially burden the person's exercise. And then the exception to that is if government demonstrates that application of the burden to the person, it furthers a compelling interest. All the way through, the statute speaks to the government. Government is the operative word. It's true the government is defined to people acting and would be sued in their official capacity, a department or an agency. And so reading the term official consistent with that in the definition, we think that official is official capacity. And again, officials are included only because they're included as part of the government. And so they could violate RFRA and be sued under RFRA only insofar as they are no money damages against the government or its constituent parts for money damages. Thank you. Justice Alito? Let me pick up on what you just said. The term government is defined to include an official, but also other person acting under color of law. And you say that a person who is exercising a private entity or a private person exercising government authority would constitute a person acting under color of law, such as the operator of a private company operating a prison. So if a person acting under color of law who is not a government official can only be sued in a personal capacity, and if that person can be sued in a personal capacity, why should we infer that an official can only be sued in an official capacity and not a personal capacity? Well, I think the basic point is that the statute calls for injunctive relief, not damages. And when let's take one who is. The substantive provision of RFRA refers to what government can do. Government shall not substantially burden. And that means that this private person would be acting in a governmentally conferred capacity. In that sense, an official capacity or the functional equivalent of an official capacity for a government officer. And then if such an entity is sued, we think it is likewise sued in the parallel official capacity that such a private person would have by virtue of having the governmental power bestowed upon it. So we think reading that that is after all in a residual parenthetical phrase, it is not the operative provision in the definition which traces back to agency, department, etc. But we think reading that clause as a whole and how it plugs into the statute, that's referring to the sort of capacity for which injunctive relief is the only proper relief against the government. And one other question. Respondent emphasizes the fact that if it prevails, uh, federal officials who are sued in a personal capacity would be able to assert a defense of qualified immunity. Now, if, if, if that is right, if we say that in the opinion, how will the federal government be harmed? Well, uh, qualified immunity is not, uh, automatic. And the, and the, what, what Congress has determined that again in the Westfall Act and this court's hesitation in recognizing new Bivens causes of action, there is qualified immunity as under statutory causes of action where they do exist and under Bivens where it does exist. And yet the court has cut off the cause of action at the outset because the very prospect being subject to suit and the protracted litigation that can ensue even with qualified immunity is thought to, uh, create the potential for killing federal employees in their work. Thank you. Justice Sotomayor. Um, as I read the briefs on both sides, each of you rely on legislative history to some extent. And I know some of my colleagues don't believe in doing that, but assume humor me, please. You don't have to make a disclaimer about its use. Um, one of the things that concerns me greatly is that RIPA was very concerned. At least Congress was with the many families who loved ones were being subjected to autopsies in violation of their religious beliefs. And in fact, there was a lot of testimony before Congress about the fact that injunctive relief would not help those families. So if that was one of the concerns of this, uh, legislation, as there's many other actions by government officials that might violate religious beliefs, why do you think Congress would have intended to preclude money damages against individual actions that violated religious belief? Um, several things. I think the focus on the autopsy situation, for example, was primarily at the substantive rule. And I mean, it arose in context of a, of a damage action. Uh, but, uh, Congress was focused on, uh, not the individual situation, but lifting burdens imposed by generally applicable rules. That is the, that is the overall thrust of RIPA as reflected in the text. Mr. Kneedler, isn't the overall thrust to give a cause of action, a claim and a remedy that's the stated purpose of the act under the terms of the Why would Congress take away from appropriate relief, the only relief that could help some people for the violation of their rights? I don't think it, I don't think it's a matter of taking away if there was some, uh, uh, remedy available under some other scheme under 1983 for a statute, or if the, if the court might have come to recognizing the Bivens cause of action under the constitution for a free exercise claim, those would, those would be, those still be available. Now, of course, this court has not done that under the free exercise clause. The question is what Congress intended to do in RFRA, uh, itself. And with that, we have a textual answer where it refers to relief, uh, uh, against, against the government. And again, equitable relief. By the way, Mr. Kneedler, by the way, is it your argument that if a court orders injunctive relief against the private government contractor, that that relief runs against the United States government itself? No, it runs, it runs against the named entity. It may, it runs against, uh, that person acting under color of law. My point is, is really that the substantive one, if you will, that entity has violated the substance of, of where, for, and the remedy should be the same as with all others who are part of the government for these purposes, an injunction, an injunction against that operator. That's who would be, that's who would be named. Thank you. Justice Kagan. Thank you. Mr. Kneedler, when Congress passed RFRA, um, the legislation applied to states and localities as well as to the federal government, we changed that. This court did in, in Bernie, but it was clear in the original legislation that Congress meant it to apply to states and localities. And I think nobody disputes that prior to Smith, uh, private citizens could seek damages under 1983 against state and local officials in their personal capacity for violating the free exercise clause. So, um, under the law as originally enacted, do you think that plaintiffs, uh, could sue state and local officials in their personal capacities for damages? Not under, not under RFRA. Uh, RFRA would not have displaced a constitutional remedy under 1983 that might've existed before, uh, RFRA was enacted. But, uh, we think the, um, application to the state would state and state employees, uh, or, uh, officials, um, would, uh, would be the same for the federal government. Again, the definition was, uh, was the same, uh, the operative term for government, not, uh, not, not official or employee or person acting under color law. So we think that a parallel answer would follow. So doesn't that seem odd to you, Mr. Needler? Because now you're saying that Congress passed this law that actually contained fewer remedies against state and local officials than the pre-Smith, uh, law did. And I thought that the whole point of RFRA was essentially to expand protection for religious liberty. Now you're saying that in, uh, this provision, it effectively contracted it. No, I, what, what, what Congress's focus was, uh, expanding or restoring to, uh, prior law, the pre-Smith substantive standard. Uh, but the text of RFRA gives no indication that Congress intended to greatly expand, uh, uh, uh, uh, relief, appropriate relief to make personal damages available under RFRA. Again, not under 1983, under RFRA, uh, for, uh, individual, uh, government employees. And as I said before, the context of RFRA, which is lifting burdens from generally applicable laws, I think further ways against, uh, Congress having done so because the individual employee is in the position of maybe on the spot from generally applicable law and damage actions could put the, uh, could put the employee in a difficult, in a difficult bind. So with respect to the self-contained system of, of RFRA, we think it, uh, we think there's no reason to think that Congress would have wanted to do that. Thank you, Mr. Kneedler. Justice Gorsuch. Good morning, Mr. Kneedler. I am, uh, struggling with the, uh, language of the, of the definitional provision that's immediately before us. As I understand it, um, the government has agreed, albeit on page 4142 and footnotes six and seven of its brief, that the phrase other person acting under color of law does permit suits for damages against private persons like the government contractor. Is that right? Uh, yes. Okay. And if that's the case, why wouldn't the same be true of officials? The, the, the last antecedent that that parenthetical clause appears to modify. I understand the government's argument that department agencies and instrumentalities are earlier in, in, in the line, but of course, none of those involves an individual who could even possibly be sued in an individual capacity. The only one that might is official. And that's the one that's right before the modifying clause in the parenthetical. Help me with that. Yeah. So when I said that the prison operator or private contractor could be subject to suit, uh, if one uses the phrase personal capacity, that's often understood to be synonymous with damages. That was not what I meant to say. And I don't think that's the sense of the statute. The, the, the private person could be sued because the statute deems him to be part of the government for purposes of this statute. But the sort of relief that is available that would be available against the government is only injunctive relief. And because an official just like an agency and also a contractor is included in the definition of government, uh, with the operative term in the Mr. Nilo, I'm sorry. I just wish to redirect you back to the question, which is, as I understood it, the government agrees that the private contractor can be sued for damages, right? Oh, no, no, we do not. Oh, you don't agree with that. Okay. Nobody can, nobody can be sued for damages in your view, right? That's what I, that's what I meant to be saying. Yes. But the, okay. The operative relief is injunctive relief. And that's because, so that, that has nothing to do with the definitional phrase that argument, as I understand it must hinge on, on the word appropriate. Is that right? Well, I think both, both informed that, but I, but I, it does, it does, uh, tied to the definition in this way, the operative term is government. And then the definition is what's included in government. But that definitional section doesn't speak to the nature of relief at all. You agree with that? No, I think it, I think it does because we, well, I mean, not in so many words, but. Okay. All right. So we're back to appropriate. And for there, I guess I just want to follow up quickly on, on, uh, Justice Breyer's question, which is, I understand that back in the day when there were forms of action, they came with limited kinds of relief, but with the merger of law and equity some time ago, uh, courts have allowed to provide any kind of relief available appropriate to the circumstances. And I don't think the government's arguing that Congress meant to ever allow or might allow inappropriate relief to the circumstances. So how does that word carry all the way you want it to? Uh, well, appropriate, uh, May I finish? Yeah. Appropriate, uh, uh, in, in this context has to take account of context, which is a suit against federal employees. And Congress has only rarely ever provided for suits against federal employees for, for money damages. I also want to say that our point is not just limited to appropriate. It's also limited to government. This court has said that the meaning of a definitional phrase can take, can be informed by the term that's being defined. And here, the term that's being defined as government, which we think lends support to the conclusion that official means official capacity person, uh, in the relief section. Thank you, Justice Kavanaugh. Uh, thank you, Mr. Chief justice. Good morning, Mr. Needler in thinking about what the text means here. Look at the words, but also look at the words that aren't there. And this is a relatively short and heavily, uh, focused upon statute by Congress at the time. And when it says appropriate relief, it does not of course say appropriate injunctive relief. Uh, and it's hard to imagine that that didn't escape the attention of the members of Congress who were focused on this. What, what do you say in response to that argument about the missing words after appropriate that would have limited it, uh, in the way that, uh, justice Gorsuch was just asking about as well. Well, I, I, I think the, the missing words, money damages are, are, are really critical because the statute reads appropriate relief against the government. Uh, and I think Congress would have understood, uh, because it's a, it's a clearly established principle that appropriate relief against the government does not include money damages unless something that we so provide and, and nothing here, uh, expressly so provide. And again, uh, officials are included only as part of the government for purposes of this statute, both the substantive provision and the remedial provision, and also tellingly the provision that requires the government to demonstrate, uh, a compelling interest if there's a substantial burden. And that doesn't fit very well with the personal damages action against an individual employee, because he may not have the information about what informs what's the compelling interest. You may not have information about the government's broader operation. Um, and so it's the government that should be coming forward with a compelling interest, for example, and the government that violates the statute and therefore the government and the relief appropriate for the government. Uh, how did the FBI special agents in cases like this, how will they pay for the damages? Well, oftentimes, I mean, if they were held liable, the government might identify them. There's no, certainly no guarantee of, of indemnification. Uh, and that, that of course will come at the end of a, uh, of a, of litigation that may be protracted. And in the meantime, the employee would have been exposed to an impacted judgment of liability, uh, under your hypo. Is there anything in the record or anything in the record or any public documents that would suggest how regularly FBI special agents are indemnified in circumstances like this? I don't, I don't think the government has produced any statistics that I, that I know of, uh, uh, on that. Um, I, I would point out that you mentioned the FBI in this context, that personal damage actions are actually concerning in the national security context where the president and the executive have special responsibilities under, under article two and the sensitivities for the no fly list and litigation like this can present special problems beyond simply the Arisa, um, uh, excuse me, the, um, uh, normal problem with suits against the government. Thank you, Mr. Needler. Do I take a minute to wrap up? Thank you, Mr. Chief justice. We think all the, uh, pertinent, uh, factors to look at here, uh, strongly indicate that personal damages actions are not available. The text is clear providing for relief only against the damages. The context we think is significant because, uh, suits against the government for government employees for personal damages have only rarely been permitted. The only time that they would have been permitted were, uh, would have been under Bivens. And this court has never recognized the cause of action, uh, under Bivens under the free exercise, uh, clause. And in terms of precedent, this court and social mom held that, uh, appropriate relief did not include damages against a state. We think a comparable principle of deference to the operation of the executive branch and not killing federal employees as reflected in the Westfall act leads to a similar conclusion here, where there is no express authorization of personal damages actions. Thank you, counsel. Uh, Mr. Kasem. Thank you, Mr. Chief justice may please the court. This court noted in city of Bernie that leading up to RFRA, Congress focused on autopsies performed on Hmong and Jewish people violation of their religious beliefs. Those were consummated injuries that only damages could remedy. Yet petitioner's interpretation of RFRA would leave those families with no claim. And there are other situations where damages are the only appropriate relief. A Jewish student in a DC school who was compelled by a gym teacher to wear immodest clothing or a federal inmate whose hand annotated Bible is destroyed by a guard junctions would be useless against these one-time harms, leaving damages as the only remedy to be sure such cases are hard to win. Qualified immunity will shield all, but those who defy clearly established law, but there is no basis for categorically excluding damages where they are warranted and essential to providing meaningful relief to victim. There was no clear statement rule in 1993. And here federal agents put my clients on the no-fly list because they refused to spy on innocent coreligionists in violation of their Islamic beliefs. My clients lost precious years with loved ones, plus jobs and educational opportunities. It was only days before oral argument on petitioner's motion to dismiss that the government confirmed my clients could fly mooting out any injunctive claims. Without damages as a deterrent, petitioners and other agents remain free to repeat what they did here, without referral until challenged in court, and then back off. The Justice Department's Office of Legal Counsel concluded shortly after RFRA's passage that damages are available in personal capacity suits. But under the department's current interpretation, this court would have to read appropriate relief to mean appropriate equitable relief, although Congress did not include that modifier as it did in ERISA, for example. The court would have to hold that both the term official and the phrase other person acting under color of law exclude personal capacity suits, although Congress enacted no such limitation, and although there is no such thing as an official capacity suit against a private person. The court should not diminish RFRA by taking away a claim that Congress provided. I welcome your questions. Well, counsel, would you still have an argument under the definition provision here if the parenthetical language wasn't in there? Your Honor, if the definitional provision in RFRA only stated official without including or other person acting under color of law, then yes, we would still have a claim because the term official, using no fewer than three modes of statutory interpretation that the court has both personal capacity suits as well as official capacity suits, because, of course, an official is a person, and a person can be sued personally, and when that person happens to be an official, they can be sued in an official capacity as well. Well, just to interrupt you briefly there, I think the argument against that, again, putting the parenthetical to one side, is that the term being defined is the government, and the list of entities you have there leading up to official are all governmental entities, branch, department, agency, instrumentality. So I think, again, without the parenthetical, there's a very compelling case for the idea that the official there is subject to suit in his official capacity. Well, Your Honor, respectfully, the real defining trait shared by all the words in the list is that these are all the ways in which government exercises power and might violate RFRA. So it includes collective entities as well as individual official. The common denominator here is not that they're all only capable of being sued for injunctive relief. No more than it is that they're all collective entities. An official, under its ordinary dictionary meaning, is an individual, a person who holds an office, and as a person, they can be sued personally. Because they happen to be an official, they can also be sued in an official capacity. That statutory term embraces both possibilities, and Congress, even though it knows how to exclude personal capacity suits, it did that in the Oil Act. It said, you know, you can only go after officials in an official capacity, but it did not do so here in RFRA. And if there's any doubt, then the parenthetical, which is in the statute, clarifies and dispels any doubt. I think that the two statutory examples you gave are pretty obscure, if that's the strong basis you have for Congress knowing how to make that distinction across the board. What were they again? The oil... Your Honor, the Mandamus and Venue Act refers to a civil action in which a defendant is an official acting in an official capacity, and so it excludes personal capacity suits. The Oil Pollution Act, and these are only two examples, also says, you know, it does not authorize a cause of action in a federal officer's personal capacity. So Congress knows how to do this, and here, emphatically, it did not, Your Honor. Thank you, Counsel. Justice Thomas? Thank you, Mr. Chief Justice. Counsel, I'm curious whether or not there's any sort of mens rea requirement in these cases, and whether or not the official has to intend to burden someone's free exercise rights. Your Honor, RFRA only requires that a burden on in this case, however, we believe that the agents, and we've alleged, and our allegations have to be taken as true, that the agent knew or should have known of the substantial burden. This is a clear prohibition in the Islamic faith. These agents are tasked with recruiting informants to spy in the Islamic faith, the Islamic community, and so we believe the agents knew or should have known, and we've said as much, but again, under RFRA, the burden need only be substantial and not whether or not the burden they're imposing is least restrictive means of furthering a governmental interest. Well, Your Honor, that is, of course, an argument among the very many arguments that petitioners could have presented in the motion to dismiss qualified immunity, the qualified immunity defense that they've made at the motion to dismiss stage. As Justice Alito said, they actually did present that defense, and they would be able to argue not only that there was no burden, that the burden was insubstantial, they'd be able to argue that there was a compelling government interest, and they'd be able to say that whatever they did was the least restrictive mean, and had petitioners accepted remand from the Second Circuit to the District Court, those are precisely the questions that would have been adjudicated on remand. Instead, of course, they sought cert, and here we are, but those are all questions that would come up immediately on remand because there was a motion to dismiss based on qualified immunity that was brought in this case. It just wasn't taken up on appeal. Thank you. It wasn't ruled upon by the District Court. I'm sorry, Your Honor. Thank you. Justice Breyer? I have one question about one of your opponent's arguments. Look at the phrase, person acting under color of law. Now, that's the key phrase, for you certainly. That suggests, particularly if you look back to similar language in 1983, that a personal action law. But this whole statute, RFRA, is really an effort to put into statutory form a certain kind of constitutional interpretation that Smith, in fact, rejected, and there was a lot of concern in Congress. There would have been no personal action if they had maintained the older interpretation of the First Amendment. So, why would Congress want to have the personal action here when they never could have had it if what Congress would have thought was the right view of the religious free exercise clause had been maintained in the Constitution? In other words, this is like a constitutional statute, no business action then, why should there be one now? Well, Your Honor, simply for the reasons that this court has restated numerous times in City of Bernie in 97 and again in Hobby Lobby, that Congress with RFRA went beyond the constitutional baseline. It did something more than merely restore free exercise claims as they existed under jurisprudence pre-Smith. The court said that clearly in Hobby Lobby, that Congress knows how to tether congressional statutes to specific jurisprudence. It did not do that here. It not only restored but provided a claim and the net result is a very broad protection for religious freedom that goes beyond the constitutional baseline. If there's any doubt about that, one need only look to the amendments that RLUIPA brought to RFRA further on tethering RFRA from that constitutional baseline, protecting any exercise of religion and not merely the exercise of religion under First Amendment jurisprudence, which was in the text when RFRA was originally enacted. Thank you. Justice Alito, suppose that this key provision of RFRA did not include the term appropriate. Would anything change so the statute would authorize, would say that a person may assert a claim or wouldn't talk about appropriate relief. Would that make a difference? Well, Your Honor, it might make a difference because, of course, the phrase appropriate relief bespeaks discretion. In fact, it bespeaks a very familiar type of judicial discretion. That phrase comes up very frequently in free exercise jurisprudence under Section 1983, including cases that have awarded damages. I think we cited a couple of those cases for illustrative purposes on page 37 of our brief, where the courts of appeal acknowledge that damages are available, remand for a determination of appropriate relief, including damages. So I think without the phrase appropriate, which bespeaks the sort of wide discretion and that familiar judicial exercise of determining which species or combination of declaratory, injunctive, and monetary relief might be appropriate in any given case. Who is to exercise this discretion? Could the district court in your case or in any other case say, in the exercise of my discretion, I think that damages should not be available in a case like this, and therefore I'm not going to allow the jury, I'm not going to submit that question to the jury? Well, Your Honor, a district court judge would be, of course, free on the facts of a given case to make a determination that damages are not particularly suitable, which is the meaning of appropriate, or to decide that compensatory damages but not punitive damages would be appropriate. But that would be on a case-by-case and not a categorical basis. There is no categorical basis to judicially exclude damages under this statute that allows for relief without limitation. It allows for that relief against officials or other persons without limitation to official capacity, suits only. And so this court and other courts should honor the statute that Congress actually enacted. And of course, you know, the defendants here, the petitioners, they are individuals, but they come to court armed with a powerful shield of qualified immunity, which protects all but the plainly incompetent or those who flout clearly established law. Thank you. Justice Sotomayor? Counsel, petitioners argue that you haven't identified any statute in which the phrase appropriate relief was interpreted to include a damages remedy against federal officials, absent some extra text making the availability of damages explicit. Is that right? And if it is, can you theorize for me why that's so? Is it because courts have held the opposite? Because courts haven't considered the question? Or because there just aren't that many statutes that authorize appropriate relief against federal government officials? Your Honor, ordinarily, Congress, you know, we've cited statutes where Congress has expressly included damages against federal officials. And we've cited statutes where Congress has expressly excluded damages against federal officials. And of course, it did neither here. But RFRA is no ordinary law. This court, as recently as Bostock, described it as a super statute. RFRA reflected a very ambitious goal that Congress had to regulate the number of federal, state, and local actors. And it did so with the most practical language it could think of. If, for example, Congress had said something along the lines of appropriate relief, including money damages, well, that could have been mistaken for an intention to pierce the sovereign immunity of the states and the federal government against damages. And no one contends that that was Congress's goal with RFRA. And so with appropriate relief against the government as defined in the statute, Congress chose the most practical terms to achieve its ambitious purpose. I'm sorry, are you taking the position that Congress didn't intend by using appropriate relief to include, before Sussman, to include states and their officials? I mean, there were private causes of action under 1983 for damages against the state government and its officials. Why would Congress not have wanted to pierce sovereign immunity with respect to states and their officials back then? Forgive me, Justice Sotomayor, let me clarify my answer. Congress, of course, intended to pierce and pierce sovereign immunity with respect to injunctive relief. What happened in Sussman was that the plaintiffs were suing the state of Texas and officials, prison officials of the state of Texas, in their official capacity, not in their personal capacity. So the plaintiffs in Sussman sued officials in an official capacity for damages, which is basically a suit for damages against the state itself. And that was barred by sovereign immunity. Had they sued those state prison officials in their personal capacity for damages, there would not have been a sovereign immunity bar, just like there is no sovereign immunity bar here in this case against these individual capacity petitioners. Thank you, counsel. Justice Kagan? Mr. Kassam, if I could just follow up on Justice Sotomayor's first question. As I understood your answer, you said, well, RFRA is a very special statute, a super statute. But assume that I don't think that for the moment. Assume that I don't think that RFRA has any special interpretive rules attached to it, that I think it should be interpreted the same way other statutes are. And then I come back to what Justice Sotomayor said, which is that we don't see any statutes, and certainly we haven't interpreted any statutes with this little specificity to permit damages against federal employees personally. So the question is, why shouldn't we take that as signaling what we should do here, that we should say, you know, Congress really has to be clear to do this, and Congress hasn't been so clear? Well, Justice Kagan, there are a few reasons. First, when Congress acted in 1993, it acted against the backdrop where the sort of relief at issue in this case was not foreclosed. As was noted earlier, there were free exercise cases under Section 1983 allowing damages. There were Bivens cases, assuming the availability of free exercise damages at that time, and there was even a case, Dellums v. Powell in 1977 out of the D.C. Circuit awarding damages against a federal officer, the chief of the U.S. Capitol Police, on a First Amendment Bivens theory, although that was a speech and assembly theory, not a free exercise theory. And the last and most important part of the backdrop against which Congress acted was the Franklin decision. Franklin came down in 1992, and it spelled out a traditional, it restated really a traditional rule that presumes that where there is a cause of action, whether it's expressed or implied, all damages, all appropriate relief is available, including damages, and it spells out a methodology for, you know, figuring out whether, what remedies are available, if a statute is silent as to remedies, or if it's ambiguous as to remedies. Well, if I could interrupt you on that point, I mean, definitely the first, but I thought that Franklin was really limited to where Congress is silent on the question of remedies. Congress is not silent on the question of remedies here. We have a question about how to interpret what it said about remedies, but it specifically spoke to remedies. So why is Franklin at all applicable? Well, Your Honor, I'd like to try to clarify that. You know, the question under the rule, so the presumption is agreed, all appropriate remedies unless Congress expressly states otherwise. The question under Franklin is always whether Congress intended to limit application of this general principle. Where you have an implied cause of action, the usual recourse to text and history is not possible, and so Congress, sorry, the court looks to the state of the law, but the principle holds even if the cause of action or the remedy is expressed, but it's ambiguous, and you need only look to Franklin itself for that explanation and for an illustration, in fact, of that methodology, because Franklin looked at the which had an explicit provision of remedy, and then it applied the usual recourse, the usual way of reading that text, which is absent any contrary indication in the text or the history of that statute. Franklin presumed that Congress acted with the traditional rule in mind, affording damages. Thank you, Mr. Kasin. Your Honor. Justice Gorsuch. Good morning. I'd like to follow up on Justice Kagan's line of questioning. I guess I'm equally befuddled by the reliance on Franklin and a lot of the Bivens line of cases involving implications and presumptions. Here, Congress expressly stated that appropriate relief may be awarded, spoke directly to remedies, and I would have thought there might have been an argument along the lines of that language refers courts to the law of remedies, and since the merger of law and cause of action that are limited in the nature of their remedies to specific forms of relief, could you comment on that? Your Honor, our position, of course, is that the text is clear and that the statute on its own gets us to the outcome that my client seeks. Franklin is not necessary to that outcome. Franklin, of course, formed a backdrop to congressional action in 1993, but Congress acted very clearly in the text of the statute itself for the reasons that we've been discussing, and to the extent there's any concerns or Bivens-type concerns here, I would like to emphasize that we are simply not in a Bivens universe. You know, this is not a judicially implied cause of action to enforce a constitutional provision that's silent, nor even a statutory provision that's silent. Here, we have an expressed right. We have an explicit right of action. We have a provision for appropriate relief with no limitation against officials or other persons, with no limitations in the text, and when we're in that realm, Franklin actually noted that there is no expansion of judicial power here, where the court is simply determining what remedies are available, and again, on a categorical basis, there is no reason to judicially, at this point, limit or exclude damages. Justice Scalia's concurrence in Franklin says as much. It's too late in the day, once Congress has acted, for the judiciary to cabin remedies and exclude or imply an exclusion of damages. So it would be sufficient for your anywhere. We're looking at the text. The text refers us to the law of remedies. The law of remedies today is a distinct area of trans-substantive law. It's unhinged from any particular form or cause of action the way it used to be, and it allows the court's discretion to form sufficient relief to make a person whole. Justice Gorsuch, as long as that opinion concludes with and we affirm, absolutely. Naturally. I would assume no less. Thank you, counsel. I'm finished. Justice Kavanaugh. Thank you, Mr. Chief Justice, and good morning, Mr. Kasem. Good morning. The first problem I have here, or concern, is just the mismatch between RFRA and the kind of suits we're talking about. You're suing, I think, still around 15 special agents of the FBI. There's no mens rea requirement, as you indicated to Justice Thomas, and they can be subject to liability under RFRA, under your theory, for enforcing a generally applicable law and subjects to damages, liability in their individual capacities. That seems just an odd mismatch. No mens rea, generally applicable law, damages in their individual capacities, and we're talking about FBI special agents here. What's your response to that concern? Well, Justice Kavanaugh, I'd begin with the statute itself. The statute states, prohibits the government from substantially burdening religious exercise, even if the burden results from a rule of general applicability. The statute does not say only if the burden results from a rule of general applicability, and it does not even say merely if it results from a general rule. Right, but they'd be covered. We're trying to figure out the term appropriate means, and thinking about appropriate, I think we think about what are the circumstances here, and it's very odd, I think, without a mens rea that it encompasses generally applicable and subjects career FBI agents to life-altering damages remedies. Just to be clear, I know there's strong interest on both sides here. I'm just trying to make sure we cover what will happen to the special agents as well. Yes, Your Honor, and Justice Kavanaugh, the law already accounts for the difference that you're highlighting, that these are not ordinary individual defendants. They are officials. They're FBI agents, and the law accounts for that difference through the well-established and robust doctrine of qualified immunity, and this court actually held as much in 1991 in Hafer v Mello, where the exact same arguments were presented by the state official capacity defendants in that case about chilling of governmental function and whatnot, and the court responded. I'm sorry to interrupt. I think that's a good answer about qualified immunity. I want to ask one other question, which is going to the text. It's not clear, the text, on what's encompassed within appropriate relief. The question is whether does that include damages or not include damages. It doesn't say appropriate injunctive relief. It doesn't refer specifically to damages, so we have to figure out what the silence means, and in thinking about that, not only do I think about the circumstances I just mentioned, but every statute authorizing damages actions against federal employees or officers in their personal capacities does so expressly and mentions damages. I think this would be a first among a very small handful where damages were awarded against federal officers in their individual capacities without the statute explicitly saying so. Justice Kavanaugh, you're correct that ordinarily Congress includes or excludes personal capacity damages of this sort. The only reason or one of the main reasons I can think of why Congress might not have wanted to do that here again is that if it had said appropriate relief, including money damages, that could have been mistaken for an intention to pierce the sovereign immunity of the federal government itself, the federal treasury or a state government at the time pre-Bernie. There's no contention that Congress wanted to allow that, and that may be why they left out an explicit mention of money damages. Of course, at the time, there was no magic words requirement, and so these were the most practical terms that Congress could find to affect the broad protection for religious freedom that it intended to affect for RFRA. Thank you. Mr. Kossin, you have three minutes remaining. Thank you, Mr. Chief Justice. I guess I'll just conclude by saying, Your Honor, that and maybe this is where you started, Mr. Chief Justice, there was no magic words requirement in 1993 when it came to imposing damages on non-sovereign parties. RFRA's text does that clearly by providing for appropriate relief against officials or other persons acting under color of law without limiting either the remedy or the capacity in which these defendants can be sued. The result my clients seek would not give the statutory text two meanings. Clark v. Martinez itself explains that sovereign immunity, barring relief in one circumstance, does not remotely establish that a statute has two meanings. It just indicates that the single and unchanging meaning of a statute does not apply against sovereigns. And petitioners' concerns about damages potentially chilling executive function are identical to those raised in Hafer v. Mello, and what the court held there is true here. Qualified immunity properly addresses those concerns. As for the separation of powers, Your Honor, that would only arise in this case if this court were to exclude damages where Congress provided them. If instead, this court allows executive officials to be held to legislative command, then that would be the separation of powers at work fulfilling the constitutional design. The court should affirm the decision below and remand for adjudication of the qualified immunity defense. Thank you. Thank you, counsel. Mr. Kneedler, three minutes for rebuttal. Thank you, Mr. Chief Justice. First, we think the text of RFRA's remedies provision answers this question by providing for appropriate relief against the government. And money damages are not appropriate relief against the government, at least in the absence of something expressly so providing, and we don't have it here. Justice Gorsuch raised the question of whether the phrase appropriate relief refers to the general law of remedies. The court in Franklin invoked that when the court was completely free to devise remedies for a cause of action that is kind of self-created. In this context, the law of remedies, though, includes important other limitations, including the sovereign immunity of the sovereign, which is what renders money damages not appropriate relief against the government. And individual government officials are included only insofar as they are part of the government under the RFRA's definition. In addition, as Justice Kagan pointed out, there are reasons beyond that to expect Congress to be especially clear if it was subjecting federal employees to personal money damages under a statute, after all, that applies throughout the government. Anytime there is a statute of general applicability, for example, that an employee is charged with administering. And in fact, we know that Congress rarely provides or allows private damages actions against the federal government. That's the background principle of the Westfall Act, and when Congress has allowed personal damage actions, it has done so expressly, and we have nothing expressed here. And that's further supported by, I think, the point that Justice Kavanaugh was making, which is that there's an odd fit here beyond the general concern about chilling government employees, especially in this national security context, that RFRA is directed at statutes and rules of general applicability, and yet, and is designed to allow exemptions from that. But this is putting a exemption to a particular governmental interest. And beyond that, RFRA itself provides that it's the government that must provide or furnish, establish that there's a compelling interest, and these are the least restrictive means for doing it. And often the individual government employee wouldn't have access even to the information necessary to make that defense, and would need to discovery against the government. So even looking at what the appropriate remedies are, they aren't available. And RFRA contains nothing like the action at law under 1983, which is what gives rise to damages there, to the extent RFRA was patterned after 1983. Thank you, General Needler. The case is submitted.